UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Lionel King,

                Plaintiff

v.

Julio Calderin, et al.,

                Defendants

Case No. 2:21-cv-01452-CDS-BNW

**Order Granting Motion for Preliminary Injunction**

[ECF No. 10]

      Incarcerated pro se plaintiff Lionel King—who is Native American—brings this civil-rights lawsuit against three High Desert State Prison (HDSP) officials for violating his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the First Amendment's free-exercise clause, and the Fourteenth Amendment's equal-protection clause. ECF Nos. 4, 6. He moves on an emergency basis for a preliminary injunction, seeking to require prison officials to provide him with a common fare diet[1] based on his sincerely held spiritual and religious beliefs. ECF No. 10. The defendants oppose King's motion based on their contention that he does not demonstrate entitlement to such relief. ECF No. 19. They maintain that under the administrative regulations of the Nevada Department of Corrections (NDOC), "Native American faith group members do not have special dietary requirements." ECF No. 19 at 2.

---

[1] "The [c]ommon [f]are menu intends to accommodate inmates whose sincere religious/spiritual dietary needs cannot be met by the [m]aster [m]enu without prohibiting their free exercise of or without substantially burdening their sincere religious/spiritual exercise in a manner that is prohibited by controlling legal authority." ECF No. 10 at 29 (Administrative Regulation 814). Further, "[t]he [c]ommon [f]are [m]enu shall be certified to meet or exceed minimum daily nutritional requirements and shall be confirmed to meet or exceed Kosher Orthodox Union standards[.]" *Id.* at 29–30. Despite the broad definition in AR 814, the defendants contend that "[t]he common fare menu is the accommodation for Jewish and Muslim inmates[.]" King recognizes that the common fare diet is not necessarily a perfect fit for him, but he concedes that "[n]o diet offered at HDSP is fully consistent with [his] beliefs, however the common fare diet is very close and [is] most closely consistent with [his] dietary needs." ECF No. 20 at 4.

1   Because I find that the *Winter* factors weigh in his favor, King is entitled to the injunctive
2   relief he seeks. I therefore grant his motion and order the defendants to place him on the
3   common fare diet until further order of the court or until he requests to be removed from that
4   diet. The defendants must file a status update addressing their compliance with this order by
5   May 15, 2023. By the same date, they must also show cause why King was not previously placed
6   on the common fare diet in light of this court's recent rulings in substantially similar cases.

**I.   Background**

NDOC's Administrative Regulation (AR) 814 outlines its common fare policy and the process by which inmates can apply to partake in the program. ECF No. 10 at 29–36.[2] Under AR 814.03, an inmate who wishes to be placed on the common fare diet must fill out a request form, including a certification that the information provided is true and correct and "that the request for a religious/spiritual dietary accommodation is based upon the inmate's sincerely held religious or spiritual beliefs." *Id.* at 31. After the form is submitted, a prison official (often the chaplain) "shall conduct a religious/spiritual belief diet accommodation interview of the inmate[.]" *Id.*

AR 814 indicates that "[a]ny inmate who sincerely subscribes to a religious/spiritual group that is listed as authorized to meet in NDOC facilities is eligible to be considered for the [c]ommon [f]are program." *Id.* Further, "[i]nmates who sincerely subscribe to other religions/spiritual beliefs may be required to provide additional information about their dietary restrictions so that their enrollment in the [c]ommon [f]are program can be considered." *Id.* AR 810.02 includes a chart of the various faith groups that NDOC recognizes, listing each group's dietary considerations, recognized holy days, worship practices, and allowable personal religious and faith group religious property. ECF No. 19-2. One of the recognized groups is

---

[2] The defendants also provide a copy of AR 814. ECF No. 19-3. Their copy and King's both indicate that they became effective on June 17, 2012, so they appear to be the same version. *Compare* ECF No. 10 at 29–36 *with* ECF No. 19-3.

"American Indian / Native American," and AR 810.02 indicates that "[n]o special dietary standard exists" for this group. *Id.* at 6.

In his injunction motion, King states that he "is a Native American and practices his sacred ancestral religion as he knows and understands it. Central to [his] sincerely held religious beliefs is a belief that he must honor his ancestors by eating only fruits, vegetables, and animals that have been humanely treated/sacrificed." ECF No. 10 at 1. He states that he made five accommodation requests to prison officials in compliance with AR 814, requesting to be fed a common fare diet. *Id.* at 2, 19–27. All were denied. In submitting his requests, King described his religious/spiritual beliefs, explained that he has practiced them for more than 20 years, and noted that he attends religious services every week if possible. *Id.* at 19–27. King alleges that defendant Julio Calderin, institutional chaplain at High Desert State Prison (HDSP), did not conduct an interview of King after he submitted his requests, as AR 814 requires, and instead denied his request for a common fare diet without an interview and without providing a reason for the denial. *Id.* at 2.

King then filed a series of grievances complaining about the denial of his requests to be on the common fare diet.[3] *Id.* at 2, 109–29. All of his grievances were also denied. *Id.* King identifies that the "core reason" behind the defendants' decision to deny his request is that under NDOC's administrative regulations, "the Native American religion does not require any special dietary requirements." *Id.* at 2. King urges that Calderin "is especially hostile towards the Native American and other nature[-]based religions" and alleges that Calderin "applies his own standards, and approves some inmates while denying others, not [based] on the sincerity of their religious/spiritual belief/need in the diet, but rather on his personal relationship with the individuals who make the request." *Id.* at 3. King believes that Calderin exhibits favoritism toward Christian inmates. *Id.* King provides sworn declarations from four other inmates supporting these allegations, three of which describe that those inmates faced similar denials

---

[3] No one disputes that King exhausted his administrative remedies prior to filing this lawsuit.

from Calderin when they made their own common fare diet requests.[4] *Id.* at 131 (Justin Paulo Decl.), 133–34 (Matthew Laneave Decl.), 136–37 (Ammianus Pompilius Decl.), 139–40 (David Carpenter Decl.).

## II. Legal standards

A party seeking an injunction must prove that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008)). The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Civil injunctive relief in the prison context "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out" in 18 U.S.C. § 3626(a)(1)(B). *Id.* A preliminary injunction is "an extraordinary and drastic remedy, one that

---

[4] Indeed, as King points out (ECF No. 20 at 3–4, citing *Howard v. Connett*, 2017 WL 4682300 (D. Nev. Oct. 17, 2017)), this court has recognized troubling conduct from Calderin before. In 2015, a jury awarded punitive damages against Calderin in a § 1983 case brought by a Muslim plaintiff. *Howard*, 2017 WL 4682300. U.S. District Court Judge Richard Boulware upheld the punitive damages award, finding that the trial evidence "supports the jury's verdict that Calderin personally and oppressively participated in the deprivation of Howard's rights." *Id.* at *8. Judge Boulware described that Calderin displayed "nonchalance about lying in an official report," "apparent indifference to his actions," and "anger for having to respond to [p]laintiff's claims." *Id.* He concluded that such conduct "could have provided an additional basis for finding that [Calderin's] behavior in repeatedly denying [p]laintiff's requests was malicious, oppressive, or in reckless disregard of [p]laintiff's religious rights." *Id.*

4

should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted). And when a party seeks a mandatory injunction ordering the "responsible party to take action," I must "deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (internal quotation marks and citation omitted).

III.   **King is entitled to injunctive relief based on the *Winter* factors.**

    a.   *King is likely to succeed on the merits of his RLUIPA claim.*[5]

The first factor under *Winter* examines the plaintiff's likelihood of success on the merits of his underlying claim. Here, King claims that the defendants violated RLUIPA by repeatedly denying his request to be placed on the common fare diet, thus substantially burdening his ability to exercise his religious beliefs. RLUIPA represents a "congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]" *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Under RLUIPA, "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Id.* at 712 (quoting U.S.C. § 2000cc-1(a)(1)-(2)). RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).

        1.   Sincerity of belief

"Although RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion, . . . [it] does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter*, 544 U.S. at 725 n.13 (internal quotation marks and citation omitted). In other words, "the 'truth' of a belief is not open to question, [but] there remains the significant question

---

[5] Because he is likely to succeed on the merits of his RLUIPA claim, I address the *Winter* factors as to that claim only. *See Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1165 (D. Nev. 2019). King also notes that he "focuses this motion for preliminary injunction on RLUIPA, as it is the most favorable to the plaintiff." ECF No. 10 at 6.

whether it is 'truly held.'" *United States v. Seeger*, 380 U.S. 163, 185 (1965). This "threshold question of sincerity . . . must be resolved in every case. It is, of course, a question of fact[.]" *Id.* "But I must also be mindful that, '[t]hough the sincerity inquiry is important, it must be handled with a light touch, or 'judicial shyness.'" *Pasaye*, 375 F. Supp. 3d at 1167 (quoting *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (citation omitted)).

The defendants do not directly address the sincerity of King's beliefs, neither explicitly challenging nor accepting it. Within their likelihood-of-success section, they assert that King's free-exercise rights were not substantially burdened, that he cannot demonstrate a substantial burden on the free exercise of his religion, and that he was neither subjected to discrimination based on his religion nor treated differently than similarly situated individuals. ECF No. 19 at 4–7. But they do not argue that his religious beliefs are not sincerely held. The closest they get to addressing the sincerity of King's beliefs is their reference to his commissary/canteen records. With little analysis or argument, they note that based on King's canteen records, "[h]e habitually orders and purchases a lot of ramen, which directly contradicts his position that he needs an earth[-]based diet. King's canteen records show his active violation of his alleged dietary restrictions in this lawsuit." ECF No. 19 at 6 (citing King's canteen order history, ECF No. 19-4).

This is insufficient to demonstrate that King's religious beliefs are insincere, particularly considering the "judicial shyness" that I must employ as to sincerity at this stage. *See Moussazadeh*, 703 F.3d at 792. While the evidence shows that King purchased various flavors of ramen (*see, e.g.*, ECF No. 19-4 at 2–14), nothing shows that he actually consumed it.[6] *See Borkholder v. Lemmon*, 983 F. Supp. 2d 1013, 1019 (N.D. Ind. 2013) ("The mere fact that [plaintiff] purchased a [ramen] product containing separately packaged meat-flavored seasoning cannot serve as conclusive

---

[6] In his reply brief, King notes that his purchase of items at the canteen "is just proof that since defendant Calderin will not approve [his] common fare diet, [he] has had to purchase items, the only items available to purchase, that are inconsistent with plaintiff's beliefs, to avoid starvation." ECF No. 20 at 4. I am unconvinced that this constitutes adequate evidence to contradict that King's beliefs are sincerely held.

6

evidence that his beliefs are insincere"). Courts have recognized that "sincerity rather than orthodoxy is the touchstone[.]" *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011). Without any evidence that King actually ate ramen or any other products that the defendants believe "contradict[] his position that he needs an earth[-]based diet," based on the evidence before me, I find that King is sincere in his religious beliefs. ECF No. 19 at 6.

### 2. Substantial burden and compelling government interest

The next question is whether the defendants' decision to deny King the common fare diet places a substantial burden on his freedom to exercise his religion, and if it does, whether there is a compelling government interest for doing so. "To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). Courts "have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (citation omitted).

The defendants contend that "King is not going to be able to succeed on his common fare diet claims because denial of the common fare diet to a member of a religious faith group that is not authorized to receive it is not a substantial burden on the exercise of his religion." ECF No. 19 at 4. This is precisely the kind of reasoning that RLUIPA was enacted to prevent. It is well established that "RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion[.]" *Cutter*, 544 U.S. at 725 n.13. The defendants seemingly argue that because the NDOC administrative regulations state that "no special dietary standard exists" for Native Americans, that in and of itself is a sufficient basis on which to deny King's common-fare request. ECF No. 19 at 2 ("Under NDOC Administrative Regulation 810.02, Native American faith group members do not have special dietary requirements."). King responds that "[t]here is no such thing as a 'Native American' religion. There are hundreds of tribes which comprise the term 'Native American.' [E]ach of these tribes have their own individual and distinct religious

beliefs and systems. Relying on the centrality of a belief to the 'Native American' 'religion' is impossible." ECF No. 10 at 10.

The defendants take their argument even further, not only asserting that King's religious freedom was not substantially burdened, but also that "he is unable to demonstrate *any* burden on his religious practice." *Id.* at 5 (emphasis added). This assertion is wholly contrary to the jurisprudence on religious freedom in prisons. Because the defendants effectively outright banned King from accessing the common fare diet—and they fail to present a compelling government interest that would justify substantially burdening King's ability to exercise his religion—King has established a likelihood of success in showing that his ability to exercise his religion was substantially burdened. *See Ross v. Sandoval*, 2018 WL 5114134 (D. Nev. Oct. 19, 2018) (finding that denial of common fare diet severely burdened plaintiff's religious exercise); *Guardado*, 2022 WL 867234 (D. Nev. Mar. 22, 2022) (same); *Pompilius v. State of Nevada*, 2021 WL 414534 (D. Nev. 2021) (same).

      b.     *King will likely suffer irreparable harm without injunctive relief.*

The second *Winter* factor is the likelihood that the plaintiff will suffer irreparable harm without injunctive relief. "When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." *Pasaye*, 375 F. Supp. 3d at 1170–71 (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed.) (footnotes omitted)). And in the Ninth Circuit, "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005). The First Amendment guarantees the free exercise of religion, and "RLUIPA expands on the First Amendment's protection of religious beliefs" further. *Pasaye*, 375 F. Supp. 3d at 1171. Because the right at issue is King's First Amendment right to freely exercise his religion, he has established irreparable harm.

       *c.*     *The balance of equities tips in King's favor, and an injunction is in the public interest.*

The third and fourth *Winter* factors assess the balance of equities between the parties and whether an injunction would be in the public interest. This analysis "requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Cottrell*, 632 F.3d 1138. Courts have found that "the public interest is served by the protection of the First Amendment rights of its citizens, even if they are prisoners." *Guardado*, 2022 WL 867234, at *4 (quoting *Saintal v. Foster*, 2012 WL 5180738, at *10 (D. Nev. Oct. 17, 2012)). "By passing RLUIPA, Congress determined that prisoners . . . have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022). Because the defendants' decision to deny King the common fare diet amounts to a total ban on his ability to exercise his religion, equity weighs in King's favor. And given Congress's intent in adopting RLUIPA to broadly protect religious interests, granting an injunction in King's favor is in the public interest. "The free exercise of one's religion is an important civil right." *Pompilius*, 2021 WL 414534 at *5.

## IV. Defense counsel is reminded to follow Nevada's Rules of Professional Conduct.

In his injunction motion, King points out that Calderin and other NDOC officials "have now been confronted, time and again, with civil rights complaints regarding their denial of religious diet accommodations." ECF No. 10 at 14. He continues that "[m]any of the recent cases against defendant Calderin have specifically dealt with the exact same issues as are raised herein . . . and were also addressed by the courts granting [other] inmate plaintiffs' motions for preliminary injunction[s]." *Id.* (citing *Ross*, 2018 WL 5114134 (granting in part Buddhist inmate's request for an injunction and ordering that he be immediately placed on the common fare diet); *Guardado*, 2022 WL 867234 (granting Native American inmate's request for an injunction and ordering that he be placed on the common fare diet); *Pompilius*, 2021 WL 414534 (granting in part Qayinite inmate's request for an injunction and ordering that he be placed on the common fare diet)).

King is correct. The three cases that he cites squarely deal with similar issues as those raised here. Notably, the defendants altogether fail to address any of these three cases in their response brief. ECF No. 19. Curiously, the last sentence before their conclusion states "[a]s all four injunction factors weigh against injunctive relief, *Ross's* motion has no merit and should be rejected." *Id.* at 8 (emphasis added). But no party in this case is named Ross.[7] This overt failure to use the correct plaintiff's name suggests a lack of attention to detail, or perhaps the recycling of a similar, previously filed opposition to this type of motion. The court recognizes that efficiency comes in all forms, including asking colleagues for assistance in addressing similar motions. But blind reliance on a previously filed opposition is perilous if not thoroughly read or cite checked. And the defendants' failure to even mention—let alone substantively address—any of the three cases that King cites from this district addressing substantially similar issues occurring at the same prison facility, HDSP, is worrisome.

Cases brought by pro se prisoners make up a large portion of this court's docket. They, like King's case, typically involve alleged violations of some of the most important rights in our country. Prisoners should not have to repeatedly seek injunctive relief because a prison system chooses not to update its policies and adjust even after this court's repeated granting of injunctions on a duplicative issue. To the extent that unnecessary litigation can be avoided, it is in everyone's best interest —and certainly in the interest of justice—to take whatever steps are necessary to limit such litigation. I remind counsel that they are bound by the Nevada Rules of Professional Conduct to "act with reasonable diligence" in representing their clients and engaging with the court. RPC 1.3.

In the interest of justice, I order that the defendants' counsel must show cause by May 15, 2023, why King was denied the common fare diet despite the court's recent rulings in cases like *Guardado v. Dzurenda*, 2022 WL 867234 (D. Nev. Mar. 22, 2022), which also involved a Native

---

[7] Ross was, however, the plaintiff's name in *Ross v. Sandoval*, in which Judge Gordon issued an injunction ordering NDOC officials to place Ross on the common fare diet. *Ross*, 2018 WL 5114134, at *5.

American prisoner at HDSP who was denied the common fare diet and was ultimately granted injunctive relief. In their response to the show-cause order, the defendants must also identify how they will update their administrative regulations—including AR 810.2, AR 814, and any other relevant internal processes—to ensure that Native American prisoners are not denied the common fare diet in similar circumstances in the future.

## V. Conclusion

IT IS THEREFORE ORDERED that King's emergency motion for a preliminary injunction [ECF No. 10] is GRANTED. The defendants are ordered to place King on the common fare diet until further order of the court or until he requests to be removed from that diet. The defendants must file a status update describing their compliance with this order no later than **May 15, 2023**.

IT IS FURTHER ORDERED that counsel for the Nevada Attorney General's Office must show cause by May 15, 2023, why the defendants did not place King on the common fare diet in light of this court's recent rulings in substantially similar cases. They must also identify how they will update their administrative regulations—including AR 810.2, AR 814, and any other relevant internal processes—to ensure that Native American prisoners are not denied the common fare diet in similar circumstances in the future.

DATED: May 1, 2023

_____
Cristina D. Silva
United States District Judge